IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:26-CR-00109-M-RN-3

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| v. | ) | |
| | ) | |
| BASHAR SAMEH MSHAKA, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on the Defendant's "Appeal of Detention Order," construed as a motion for revocation of a magistrate judge's detention order pursuant to 18 U.S.C. § 3145(b) [DE 40]. The court heard the matter this afternoon, July 20, 2026. Having also reviewed the motion, the government's response, and the entire record, the court denies the Defendant's motion.

A person charged with a federal crime may be detained until his or her trial to reasonably assure that the person does not (1) flee before being tried for the crime charged or (2) endanger others or the community. 18 U.S.C. §§ 3142(a), (d), (e). While a person charged with an offense may be temporarily detained without a hearing, 18 U.S.C. § 3142(d), a longer detention requires that the person be given a pretrial detention hearing at which he or she may petition the court to be released. 18 U.S.C. §§ 3142(e), (f).

At a pretrial detention hearing, the presiding judicial officer is statutorily required to consider the following factors "in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community":

(1) the nature and circumstances of the offense charged, including whether the offense . . . involves a . . . controlled substance. . . ;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

   (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

   (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

18 U.S.C. § 3142(g). The person opposing detention is "afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise." 18 U.S.C. § 3142(f). "The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." *Id.*

All parties agree that the issue before the court is whether the government can satisfy its burden to demonstrate by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the Defendant's appearance as required. *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001). "For pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance or the safety of others or the community, is sufficient; both are not required." *Id.*

When a detention order is entered by a magistrate judge, the detainee may file a motion with the appropriate district court seeking revocation of the order pursuant to 18 U.S.C. § 3145(b). The district court must then conduct a *de novo* review of the magistrate judge's decision. *United*

*States v. Williams*, 753 F.2d 329, 333–34 (4th Cir. 1985).  In conducting its review, the district court reviews the magistrate judge's findings based on the evidence presented to the magistrate judge.  *Id.*  The district court also has the discretion to conduct an additional evidentiary hearing if it determines that another hearing would be useful.  *See Martin*, 447 F. Supp. 3d at 402–03 (citing *Williams* for the proposition that "the court may permit the parties to 'introduce proffers of evidence' as an alternative way to allow the introduction of new evidence").

In this case, Defendant is charged with one count of possession with intent to distribute marijuana (in violation of 21 U.S.C. § 841(a)(1)), one count of conspiracy to commit a money-laundering offense (in violation of 18 U.S.C. § 1957), and thirty (30) counts of structuring financial transactions to avoid reporting obligations (in violation of 31 U.S.C. § 5324(a)(3)).  He was arrested and taken into custody on June 26, 2026.  On July 2, 2026, after a hearing, Magistrate Judge Gates ordered Defendant detained based on the strength of the evidence against Defendant, his close ties to family and/or others outside the United States, and a "statement by Defendant in April 2026 of intent to flee to Syria."  DE 37.

In the present motion, Defendant seeks release arguing that the government, who surveilled Defendant during the investigation period, cannot point to any actions or preparations made by Defendant in furtherance of fleeing the jurisdiction.  Because Defendant is prepared to turn over his passport and be electronically monitored under supervision, he argues that a combination of conditions will reasonably assure his appearance as required.

The United States alleges that Defendant was an employee of a "vape" wholesale company (NC Vape Zone), who, after a search and seizure of marijuana products from that company, continued surreptitiously to distribute marijuana products through a second wholesale company Defendant owned, "Ascend Brand LLC," and who later attempted improperly to liquidate funds

from Ascend's bank account when Defendant learned the bank was preparing to close the account. Defendant allegedly engaged in some of this conduct while at his family's home in Syria from September 2025 through April 2026. Upon his return, law enforcement met Defendant at the airport and seized his cellular phone. According to a confidential source, Defendant later told a group of people, including the confidential source, that he "was unconcerned with the legality of Ascend's products, and that he planned to make as much money as possible over the next several months before returning to Syria." DE 41.

The court heard testimony from the case agent, James Dailey, an IRS special agent tasked with investigations of money laundering during and in relation to suspected drug trafficking. Agent Dailey testified that in May 2025, he and other law enforcement officers executed a search warrant at Ascend's warehouse, during which time Defendant was not present. The officers seized a substantial number of products suspected to contain marijuana. Dailey spoke with Defendant by phone and explained the content and process of the warrant. Defendant agreed to meet Dailey at the warehouse but, later, called to say he would not meet. From this encounter, Dailey interviewed Ascend employees, one of whom became a paid confidential source ("CS").

Dailey testified that the CS provided what law enforcement perceived to be truthful information about the Defendant, his co-defendant(s), and the company's operation. The information was corroborated by other objective evidence, such as photographs and database information. Dailey believes that the CS has always provided reliable and truthful information.

Relevant here, Defendant was born in Syria and later became a naturalized citizen of the United States. Law enforcement learned that Defendant traveled to and stayed in Syria at a "family home" from September 2025 to April 2026. Officers, including Dailey, learned of the date Defendant returned to the United States and met him at the Raleigh-Durham International Airport

4

on Defendant's arrival. Officers seized Defendant's cell phone and started a conversation regarding the investigation with him, but Defendant determined to retain an attorney, and the encounter was concluded. Defendant returned to his family home in North Carolina. After retaining counsel, Defendant and counsel met with Dailey and the Assistant United States Attorney. Defendant was later arrested on June 25, 2026, more than two weeks after his co-Defendant was arrested.

The confidential source reported to Dailey that, sometime during this period, Defendant discussed with a group of friends, including the confidential source, his encounter with the government and stated that he "didn't care" if the products were illegal and that he would "make as much money as possible and return to Syria." On cross examination, Dailey conceded that law enforcement observed nothing indicating that Defendant was preparing to travel abroad.

Here, based on the testimony presented and its review of the record, the court concludes that Defendant must be detained. Again, the parties agree that the only issue to be determined by this court is whether the United States has demonstrated by a preponderance of the evidence that no condition or combination of conditions can reasonably assure Defendant's appearance as required. Magistrate Judge Gates ordered detention based on the strength of the evidence against Defendant and the Defendant's statement, made after knowing he was under investigation, that he intended to return to Syria. Based on Dailey's testimony, the court finds the CS's account of Defendant's statement credible and reliable. Defendant does not argue that he never made the statement; rather, he contends that such statement may be construed in different ways. Based on the context in which the statement was made, however, the court finds it demonstrates a credible risk that Defendant could flee to a country from which he may not be extradited back to the United States.

Defendant is correct that certain conditions, such as location monitoring and the surrender of Defendant's passport, could make fleeing to a foreign country more difficult. However, the court is fully aware that these conditions can be skirted by individuals who know (or can learn fairly easily) how to do so. Thus, the court agrees with Magistrate Judge Gates' order of detention and will not revoke it.

Accordingly, the court concludes that Defendant must be detained pending his trial, and that the magistrate judge correctly reached the same conclusion. Defendant's motion to revoke the detention order [DE 40] is DENIED.

SO ORDERED this 20th day of July, 2026.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE